# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHAEL T. SORRENTINO,<br><br>        Plaintiff,<br><br>    v.<br><br>GLOBAL FINANCIAL PRIVATE CAPITAL, LLC,<br>a Florida Limited Liability Company,<br><br>        Defendant. | Case No. 1:18-cv-06534-KPF |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Michael T. Sorrentino ("Plaintiff" or "Sorrentino"), for his complaint against Global Financial Private Capital, LLC ("Defendant" or "GFPC") alleges as follows:

## NATURE OF THE CASE

1. Sorrentino brings this action against GFPC to redress continued harm caused by GFPC's defamation, threats to enforce an unlawful non-compete agreement, failure to pay earned wages, and breach of contract in connection with Sorrentino's resignation from GFPC.

## THE PARTIES

2. At all times relevant, Sorrentino was and is a citizen of the United States and domiciled in New York. Until February 28, 2018, Sorrentino was employed with GFPC and primarily worked at the company's office located in New York, New York.

3. GFPC is a Florida domestic limited liability company with a principal place of business in Sarasota, Florida. GFPC is an investment advisor firm registered with the Securities and Exchange Commission ("SEC"), and "notice filed" with various states, including New York.

**JURISDICTION AND VENUE**

4.      Pursuant to 28 U.S.C. § 1332(a), this Court has jurisdiction over the claims asserted in this action based upon diversity of citizenship between the parties.  The amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

5.      The Court has personal jurisdiction over GFPC based on its sustained business activities in New York (including an active securities notice filing registration in the state), and minimum contacts in New York.

6.      Venue is proper in this district, pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Sorrentino's claims occurred within this district, including the employment of Sorrentino and GFPC's breach of duties stemming from that employment relationship.  Additionally, most of the discovery and the situs of key percipient witnesses in this action are located in New York.

**FACTS COMMON TO ALL CLAIMS**

7.      From September 2015 through February 2018, Sorrentino was employed with GFPC.  At the time of his resignation from GFPC, Sorrentino served as a Senior Vice President, Portfolio Strategist and was based in New York, NY.

8.      Sorrentino and GFPC are parties to a written employment agreement dated January 9, 2017 (the "Original Agreement").  The Original Agreement provided, inter alia, for a base salary of $225,000, a discretionary bonus, and incentive compensation.

9.      Sorrentino and GFPC are also parties to a document entitled Confidential Information, Invention Assignment, Non-Compete and Non-Solicitation Agreement dated January 9, 2017 (the "Restrictive Covenants"), which states in relevant part:

> 8.      **Non-Compete Provision.** I acknowledge and agree that I shall not, at any time during my employment with the Company

2

and for a period of six (6) months thereafter, anywhere in the United States, either directly or indirectly: (i) accept employment with or render services to any person or entity that is a business competitor of the Company, or has at any time during my employment with the Company engaged or attempted to engage in business competition with the Company, in a position, capacity, or function that is similar, in title or substance, whether in whole or in part, to any position, capacity, or function that I held with or in which you served the Company; or (ii) invest in any person or entity that is a business competitor of the Company, or has at any time during my employment with the Company engaged or attempted to engage in business competition with the Company, except that I may own up to one percent (1%) of any outstanding class of securities of any company registered under Section 12 of the Securities Exchange Act of 1934, as amended;

9. **Solicitation of Employees, Consultants and Other Parties.** As described above, I acknowledge and agree that the Company's Confidential Information includes information relating to the Company's employees, consultants, customers and others, and that I will not use or disclose such Confidential Information except as authorized by the Company. I further agree as follows:

(a) Employees, Consultants. I agree that during the term of the Relationship, and for a period of eighteen (18) months immediately following the termination of the Relationship for any reason, whether with or without cause, I shall not, directly or indirectly, solicit, induce, recruit or encourage any of the Company's employees or consultants to terminate their relationship with the Company, or attempt to solicit, induce, recruit, encourage or take away employees or consultants of the Company, either for myself or for any other person or entity.

(b) Other Parties. I agree that during the term of the Relationship, and for a period of eighteen (18) months immediately following the termination of the Relationship for any reason, whether with or without cause, I will not negatively influence any of the Company's clients, licensors, licensees or customers from purchasing Company products or services or solicit or influence or attempt to influence any client, licensor, licensee, customer or other person either directly or indirectly, to direct any purchase of products and/or services to any person, firm, corporation, institution or other entity in competition with the business of the Company. In addition, I acknowledge that the Company has valuable Trade Secrets (as defined by applicable law from time to time) to which I will have access during the term of the

3

>Relationship. I understand that the Company intends to vigorously pursue its rights under applicable Trade Secrets law if, during a period of eighteen (18) months immediately following the termination of the Relationship for any reason, whether with or without cause, I solicit or influence or attempt to influence any client, licensor, licensee, customer or other person either directly or indirectly, to direct any purchase of products and/or services to any person, firm, corporation, institution or other entity in competition with the business of the Company. Thereafter, the Company intends to vigorously pursue its rights under applicable Trade Secrets law as the circumstances warrant.

10. On or about July 2, 2017, GFPC and Sorrentino amended the Original Agreement (the "Amended Agreement") to replace the Original Agreement's discretionary bonus provision with a ***non-discretionary*** quarterly bonus of $18,750, and a ***non-discretionary*** year-end bonus of $50,000 (collectively, the "Guaranteed Bonuses", and together with Sorrentino's base salary, the "Guaranteed Wages").  The Amended Agreement is memorialized in writings and emails by and between GFPC and Sorrentino.

11. Sorrentino's duties and responsibilities at GFPC included collaboration with Akos Beleznay, the Chief Investment Officer of GFPC, to develop investment strategies and identify investment products for the majority of assets under management by GFPC.  Notably, Sorrentino's duties and responsibilities expressly excluded compliance.  As an investment professional with a Chartered Financial Analyst ("CFA") designation, Sorrentino assumed and fulfilled fiduciary obligations and duties to GFPC and its clients.

12. Between December 2017 and January 2018, Sorrentino reported to GFPC management that Sorrentino had not been paid all of the Guaranteed Wages which became due and payable during the calendar year 2017.  In response, GFPC acknowledged that certain Guaranteed Wages in the amount of $50,000 were previously promised, but were not paid.

13.     Despite Sorrentino's demand, GFPC failed and refused to cure the material breach of the Amended Agreement regarding Sorrentino's unpaid Guaranteed Wages.

14.     As a result of GFPC's refusal to compensate Sorrentino as promised, and because of Sorrentino's growing concerns regarding GFPC's management decisions, Sorrentino decided to resign from GFPC. On or about January 19, 2018, Sorrentino expressly notified GFPC's management representatives of Sorrentino's intent to resign, but offered to stay on until February 28, 2018, in order to ease the transition and cover projects then in the pipeline for GFPC.

15.     On or about January 25, 2018, Sorrentino contacted GFPC's Chief Executive Officer, Michael Bell ("Bell"), and other GFPC management representatives to report Sorrentino's concerns that GFPC had publicized false, misleading, and disparaging information regarding the circumstances and reasons triggering Sorrentino's exit from GFPC, and that GFPC did so in an apparent effort to defame Sorrentino.  Specifically, on or about February 25, 2018, and continuing through July , 2018, GFPC circulated company-wide emails and/or verbally stated misleading information to its management representatives, employees, and investment advisor representatives regarding the false facts that Sorrentino had resigned from GFPC in order to join Christopher Sleight and truAdvice, and that Sorrentino was unlawfully soliciting GFPC clients and advisors to exit from GFPC -- all in violation of Sorrentino's employment agreement. GFPC further defamed Sorrentino by spreading mistruths regarding Sorrentino's reasons for resigning from GFPC.  All of the above statements were false and cast Sorrentino in a bad light, damaging his otherwise stellar reputation as a licensed CFA.

16.     Within the above context and in response to GFPC's defamatory statements and reputational harm, Sorrentino expressly demanded to Bell and other GFPC management representatives that GFPC stop spreading mistruths regarding the bases for, and circumstances

giving rise to, Sorrentino's departure from GFPC. Notably, Sorrentino expressly requested that GFPC not mislead other third parties about the fact that Sorrentino's exit from GFPC was based on his voluntary resignation. Attached as Exhibit A is a true and correct copy of the January 25, 2018, email exchanged by and between Sorrentino and Bell wherein Sorrentino expressly put GFPC on notice of his demand to cease the defamatory remarks that damaged (and has continued to damage) Sorrentino's professional reputation.

17. Despite Sorrentino's repeated demands for GFPC to correct its earlier misleading and materially false statements regarding the circumstances of Sorrentino's separation from GFPC, the company failed and refused to respond.

18. Despite Sorrentino's repeated demands for GFPC to pay Sorrentino's unpaid Guaranteed Wages, GFPC failed and refused to respond.

19. By formal letter (the "Cease & Desist Letter") dated July 3, 2018, which GFPC intentionally distributed and published to other financial advisors and potential referral sources for Sorrentino, wherein GFPC falsely accused Sorrentino of many unfounded and baseless acts that purportedly violated the Restrictive Covenants. Notably, GFPC falsely accused Sorrentino of "contacting GFPC's employees and financial advisors, as well as financial advisors not affiliated with GFPC, and making false, defamatory, and materially damaging statements regarding GFPC." In the Cease & Desist Letter, GFPC expressly threatened Sorrentino with legal action, injunctive relief, and recovery of damages.

20. Upon his receipt of the Cease & Desist Letter, Sorrentino expressly and fervently denied the accusations and demanded evidence to support GFPC's frivolous claims. As of the date of the filing of this Complaint, GFPC has produced no evidence to support the baseless accusations contained in its Cease & Desist Letter, thereby demonstrating that GFPC sent the

Cease & Desist Letter only to harass, disparage, and attempt to bully Sorrentino for asserting his claim for payment of the Guaranteed Wages.

## FIRST CLAIM FOR RELIEF
### (Defamation Per Se)

21.     Sorrentino re-alleges and incorporates by reference paragraphs 1 through 20 as if fully set forth herein.

22.     Beginning in January 2018 and continuing through July 2018, GFPC deliberately published to third parties false, unsubstantiated and disparaging statements regarding Sorrentino's professional conduct and damaged his professional reputation.  GFPC published the defamatory statements to Sorrentino's current or former clients, business associates, and potential referral sources.  As such, the defamatory statements were defamatory *per se*.

23.     The defamatory statements included, but were not limited to, accusations that Sorrentino: (1) breached his duties of confidentiality by leaking to financial advisors the basis for Sorrentino's resignation from GFPC; (2) breached the Restrictive Covenants by improperly competing for GFPC's business; and (3) breached the Restrictive Covenants by actively soliciting clients of GFPC.  All of the above statements were and are demonstrably false, and GFPC knew those statements to be false when made.  The above statements were made in or about mid-February, 2018 through July, 2018, by GFPC's management representatives (including, but not limited to Michael Bell, Tyler Bain, Andy Barnett, Doug Townsend) to Sorrentino's former colleagues, other GFPC investment advisors, and other potential referral sources.

24.     As a direct and proximate result of GFPC's above-alleged defamation, Sorrentino has suffered, and will continue to suffer, economic and non-economic damages.  The damages include, but are not limited to, lost income and benefits, emotional distress, embarrassment,

5314968v.4

humiliation, loss of enjoyment of life, and damage to his health and to his professional reputation. The amount of damages will be proven at trial but is expected to be no less than $250,000.

## SECOND CLAIM FOR RELIEF
### (Breach of Contract)

25. Sorrentino re-alleges and incorporates by reference paragraphs 1 through 24 as if fully set forth herein.

26. Sorrentino and GFPC were parties to the Amended Agreement, which required GFPC to pay Sorrentino, among other things, a non-discretionary year-end bonus of $50,000 due and payable on December 31, 2017.

27. Sorrentino met all conditions precedent to receive the Guaranteed Wages.

28. GFPC breached the Amended Agreement by failing and refusing to comply with all terms set forth in the Amended Agreement, including payment to Sorrentino in the amount of $50,000.

29. Despite repeated demands for same, GFPC failed and refused to pay Sorrentino the Guaranteed Wages to which he was promised, and which he clearly earned.

30. As a result, Sorrentino has been damaged in the amount of not less than $50,000, plus interest, costs, and attorney's fees incurred herein.

## THIRD CLAIM FOR RELIEF
### (Unjust Enrichment)

31. Sorrentino re-alleges and incorporates by reference paragraphs 1 through 30 as if fully set forth herein.

32. Sorrentino conferred a benefit on GFPC in the form of services as its Senior Vice President, Portfolio Strategist.

33. GFPC was unjustly enriched in an amount not less than $50,000.

34. Despite demand, GFPC failed and refused to pay Sorrentino for the benefit that GFPC received.

35. Under the circumstances, it would be unjust to allow GFPC to retain the benefit of Sorrentino's professional services without requiring GFPC to pay for that benefit.

36. Sorrentino is entitled to recover from GFPC an amount not less than $50,000 for the latter's unjust enrichment, plus interest, costs, and attorney's fees incurred herein.

### FOURTH CLAIM FOR RELIEF
**(Breach of Implied Covenant of Good Faith and Fair Dealing)**

37. Sorrentino re-alleges and incorporates by reference paragraphs 1 through 36 as if fully set forth herein.

38. GFPC breached its duties of good faith and fair dealing by:

   A. Unlawfully, and with improper motives and/or improper means, interfering with Sorrentino's prospective and existing business relations by publishing false and defamatory statements regarding Sorrentino's tenure with, and circumstances surrounding his separation from, GFPC;

   B. Inducing Sorrentino to enter into an Amended Agreement that GFPC had no intention of honoring;

   C. Misleading Sorrentino regarding payment of his fully-earned, non-discretionary bonus; and

   D. Acting dishonestly and intentionally to harm Sorrentino's reputation by publishing to many of Sorrentino's former GFPC colleagues and potential referral sources the Cease & Desist Letter, which had no legal basis in fact or law.

39. GFPC's above-described acts and omissions proximately caused, and continue to cause, Sorrentino to suffer damages. GFPC is therefore liable to compensate Sorrentino damages of not less than $250,000, plus attorney's fees and costs incurred herein.

## FIFTH CLAIM FOR RELIEF
### (Failure to Pay Guaranteed Wages - N.Y. Labor Law § 190, *et. seq.*)

40. Sorrentino re-alleges and incorporates by reference paragraphs 1 through 39 as if fully set forth herein.

41. At all times relevant to this claim, Sorrentino was an employee of GFPC within the meaning of N.Y. Lab. Law § 190(2).

42. The Guaranteed Wages, including but not limited to the Guaranteed Bonuses, are "wages" within the meaning of N.Y. Lab. Law § 190(1).

43. At no point in time did Sorrentino authorize GFPC to make any deductions from the Guaranteed Wages, other than the standard employee withholdings.

44. GFPC was obligated to pay Sorrentino the Guaranteed Wages in accordance with the agreed terms of employment, but in any event, no later than the regular pay day following termination of employment, in accordance with N.Y. Lab. Law § 191(3).

45. Despite repeated demands for same, GFPC failed and refused to pay Sorrentino the Guaranteed Wages.

46. Pursuant to N.Y. Lab. Law § 198, Sorrentino is entitled to recover from GFPC an amount not less than $50,000 for unpaid Guaranteed Wages, plus an equivalent amount in liquidated damages, prejudgment interest, costs, and attorney's fees.

5314968v.4

## SIXTH CLAIM FOR RELIEF
### (Declaratory and Injunctive Relief)

47. Sorrentino re-alleges and incorporates by reference paragraphs 1 through 46 as if fully set forth herein.

48. An actual controversy exists between Sorrentino and GFPC regarding whether the Restrictive Covenants are valid and enforceable as to Sorrentino.

49. The Restrictive Covenants are invalid and unenforceable as unlawful restraints on trade, lack of consideration, and fraudulent inducement.

50. The non-competition restriction in the Restrictive Covenants is overbroad and unreasonable as to time and scope and must, therefore, be declared unenforceable.

51. GFPC breached a material term of the Agreement, and therefore failed to fulfill a condition precedent of the Restrictive Covenants.

52. The Restrictive Covenants are unenforceable for want of consideration.

53. The Restrictive Covenants are otherwise void and unenforceable against Sorrentino.

54. Sorrentino is entitled to a declaration that the Restrictive Covenants are invalid and unenforceable under applicable law, and against public policy.

55. Sorrentino further seeks an injunction prohibiting GFPC from threatening, harassing, or publishing any statements that Sorrentino is bound by a non-competition provision, or has otherwise violated any provision of the Amended Agreement or the Restrictive Covenants.

## ATTORNEYS' FEES AND COSTS

56. It has been necessary for Sorrentino to retain counsel to represent Sorrentino's interests in this matter. Pursuant to the authorities stated above, which are incorporated herein

by reference, Sorrentino seeks a court order compelling GFPC to pay all reasonable fees and costs incurred by Sorrentino in this action.

## DEMAND FOR A JURY TRIAL

57.   Sorrentino hereby demands a jury trial pursuant to Rule 38 of the Federal Rules of Civil Procedure on all issues so triable.

## PRAYER FOR RELIEF

Plaintiff prays for the following judgment against Defendant:

A.   On Plaintiff's First Claim for Relief, awarding Plaintiff damages of not less than $250,000, plus interests, costs, and attorney's fees;

B.   On Plaintiff's Second Claim for Relief, awarding Plaintiff damages of not less than $50,000, plus interests, costs, and attorney's fees;

C.   On Plaintiff's Third Claim for Relief, awarding Plaintiff damages of not less than $50,000, plus interests, costs, and attorney's fees;

D.   On Plaintiff's Fourth Claim for Relief, awarding Plaintiff damages of not less than $250,000, plus interests, costs, and attorney's fees;

E.   On Plaintiff's Fifth Claim for Relief, awarding Plaintiff damages of not less than $50,000, plus interests, costs, and attorney's fees;

F.   On Plaintiff's Sixth Claim for Relief, declaring that the Restrictive Covenants are void and unenforceable as a matter of law, and that Plaintiff is not subject to any post-employment restrictions or covenants in favor of Defendants;

G.   Such other and further relief as the Court may deem just and equitable.

Dated: July 20, 2018

       By: */s/ David C. Kurtz*
           LISANNE M. BUTTERFIELD
           OR Bar #913683; NY Bar #5551296
           (*pro hac vice admission pending*)
           lbutterfield@carrbutterfield.com
           CARR BUTTERFIELD, LLC
           5285 Meadows Road, Suite 199
           Lake Oswego, OR 97035
           Phone: 503-635-5244
           Fax: 503-635-2955

           David C. Kurtz (DK-8055)
           CONSTANGY, BROOKS, SMITH & PROPHETE LLP
           The New York Times Building
           620 Eighth Avenue, 38th Floor
           New York, NY 10018
           Tel: 646.341.6542
           Fax: 646.341.6543
           Email:  dkurtz@constangy.com
           **ATTORNEYS FOR PLAINTIFF**